# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| BRIAN REESE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:12-CV-132-JEM |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Brian Reese on March 29, 2012, and a Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 15], filed by Plaintiff on July 25, 2012. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On August 4, 2012, the Commissioner filed a response, and on October 3, 2012, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On June 8, 2009, Plaintiff filed an application for disability insurance benefits ("DIB") with the U.S. Social Security Administration ("SSA") alleging that he became disabled on June 26, 2008. Plaintiff's application was denied initially and upon reconsideration. On October 26, 2010, Administrative Law Judge ("ALJ") Edward P. Studzinski held a hearing at which Plaintiff, with counsel, Plaintiff's wife, and a vocational expert ("VE") testified. On November 10, 2010, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.      The claimant met the insured status requirements of the Social Security
        Act through December 31, 2008.

2.      The claimant has not engaged in substantial gainful activity since June 26, 2008, the alleged onset date.  (20 CFR 404.1571 *et seq.*).

3.      The claimant has severe impairments: depression, degenerative joint disease, degenerative disk disease, status post left foot surgery, and obesity.  (20 CFR 404.1250(c)).

4.      The claimant does not have an impairment or combination of impairments that meet or medically equal any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), requiring that he lift 20 pounds occasionally and ten pounds frequently.  The claimant can stand and walk for six hours with normal breaks but cannot walk on slippery or uneven surfaces.  The claimant can occasionally climb stairs and ramps, balance, stoop, kneel, and crouch, but can never climb ladders, ropes, or scaffolds and can never crawl.  The claimant should never be around fumes, odors, dusts, gases, or poor ventilation or hazards such as unprotected heights or exposed machinery.  The claimant is limited to work that is simple, routine, and repetitive consisting of three to four step tasks.  The claimant is limited to work which does not require a high production rate and does not require more than occasional interaction with the general public, coworkers or supervisors.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was 48 years old, defined as a younger individual age 18-49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 CFR 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that existed in significant numbers in the national economy that the claimant could perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 26, 2008, the alleged onset date, through the date of the decision. (20 CFR 404.1520(g)).

On April 10, 2012, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

### A. Background

Plaintiff was 49 years old on the date of his alleged disability onset, 50 years old on the date of the hearing. He had a high school education and past work as a mechanic.

### B. Medical and Mental Health Evidence

Plaintiff suffers from degenerative disk disease with ventral disc bulging, and lumbar radicular pain. For treatment, he has undergone epidural steroid injections, painkillers, and corrective back surgery. Plaintiff also has been diagnosed with bilateral degenerative arthritis in his knees, with joint swelling and tears in his medial and lateral meniscuses. He has had several arthroscopic procedures. In addition, Plaintiff suffers from foot pain, and has had multiple osteotomies of his third metatarsal. In addition, Plaintiff is obese and suffers from obstructive sleep apnea.

In June 2010, Dr. Magno, Plaintiff's treating physician, completed an assessment in which he opined that, due to back and bilateral knee pain, Plaintiff was not capable of walking a block, could only sit for 45 minutes and stand for 5 minutes at a time, could only sit, stand, or walk for less than 2 hours in an 8 hour workday, and needed fifteen-minute breaks four times per day. Dr. Magno also opined that Plaintiff should elevate his legs and needed a cane for ambulation and limited Plaintiff to lifting no more than ten pounds. In addition, he wrote that Plaintiff would be off task approximately 25% of the day and would likely miss more than four days of work per month due to his impairments and/or treatment.

In August 2009, consultative examining physician Dr. Smejkal noted that Plaintiff had a limping gait and had difficulty stooping, heel-toe walking, and getting on and off the examination table. He appeared to be comfortable sitting and had no spinal tenderness, negative straight leg raising, normal range of motion in his back and other joints, no joint swelling, and normal sensation.

Plaintiff has been diagnosed with major depressive disorder and bipolar disorder. In July 2009, at a psychological consultative examination at the request of the agency, he was well-oriented and denied suicidal thoughts. He could not sustain attention to perform serial sevens but exhibited no memory deficits.

## C.    Vocational Expert Testimony

At the Administrative Hearing, Donald Gresick testified as a neutral vocational expert. The ALJ presented a series of hypothetical scenarios involving various work limitations, and the VE opined that work would not be available to individuals with the limitations in several of the restrictive hypothetical scenarios. In response to the ALJ's questioning about what element of a

particular hypothetical was precluding work, the VE said that if the number of steps in the tasks performed by the hypothetical person was increased, then there would be work. The ALJ adjusted the hypothetical accordingly, leaving all limitations the same but increasing the work the individual would be able to do to three or four step tasks, rather than the one or two step tasks in the previous hypothetical scenario. In his opinion, the ALJ's finding of the Plaintiff's RFC was consistent with this hypothetical. In response, the VE testified that there was work available to a person with those limitations in the regional economy.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but

whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

### A.     Credibility

Plaintiff argues that the ALJ improperly evaluated Plaintiff's credibility. In particular, Plaintiff argues that the ALJ failed to explore the basis for Plaintiff's non-compliance with treatment, failed to properly analyze the evidence supporting Plaintiff's complaints of pain, and did not consider his limitations in activities of daily living. The Commissioner argues that the ALJ's opinion is supported by substantial evidence and that the ALJ properly considered the evidence of record.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve your pain or other symptoms

> . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96–7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96–7p, 1996 WL 374186 (July 2, 1996).

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96–7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96–7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

Plaintiff argues that the ALJ's credibility assessment was improper for several reasons. First, he argues that the ALJ failed to explore the basis for his non-compliance with treatment orders. When considering noncompliance with treatment as a factor in determining whether a claimant's statements regarding his symptoms are credible, an ALJ is also required to make a determination about whether noncompliance with treatment is justified and develop the record accordingly. *See* SSR 96-7p at *7; *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can

undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p).

The ALJ mentions several times that Plaintiff was not completely compliant with instructions to rest and keep his foot dry after surgery, exacerbating his foot difficulties and, in one case, requiring an additional surgery. As the Plaintiff argues, the ALJ never addressed Plaintiff's reasons for that noncompliance, nor did he ask Plaintiff about the noncompliance at the hearing.

The Court notes that the noncompliance identified by the ALJ is somewhat different from the "infrequent treatment or failure to follow a treatment plan [that] can support an adverse credibility finding." *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). This is not a situation where a claimant fails to get surgery or take a recommended medication, noncompliance that could indicate that a plaintiff is exaggerating symptoms. *See* SSR 96-7p at *7 ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."). Instead, in contravention of post-surgery instructions, Plaintiff walked too much on his foot and failed to keep the dressing dry and undisturbed, requiring additional medication in one instance and a second surgery in the other. At most, the noncompliance necessitated additional surgeries, but does not indicate that the underlying injuries were themselves not severe nor that the surgeries were unwarranted.

Plaintiff argues that even if his noncompliance with surgery instructions might be reason to discount the severity of his foot impairments, it is not a reason to discredit the rest of Plaintiff's other impairments. Plaintiff argues that the ALJ improperly dismissed Plaintiff's complaints of back and knee pain and failed to demonstrate how he considered the evidence that supports Plaintiff's allegations. The ALJ described some of the medical records addressing Plaintiff's impairments, but discounts the severity of Plaintiff's symptoms based primarily on Plaintiff's daily activities. As described in the following section, it is not apparent whether the ALJ gave much weight to the opinions of any of Plaintiff's treating or examining physicians.

Instead, the ALJ relied on Plaintiff's daily activities for his conclusion that Plaintiff's impairments were not as severe as he alleged. Plaintiff argues that the ALJ overstated Plaintiff's activities of daily living and equated them with the ability to perform light work. The ALJ stated that "claimant has reported no problems with his activities of daily living," citing Plaintiff's Function Report. AR 18, 271. Despite the ALJ's assertions, the report actually includes numerous problems with activities of daily living and complaints of limitations, even in the areas that the ALJ pointed to as specifically indicative of Plaintiff's abilities. For example, the ALJ noted that Plaintiff takes care of the family dog, but Plaintiff reported that "when [he] can [he] clean[s] up her messes outside" but that he needs assistance caring for the dog, so his "wife [and] son feed her, wash [her], and clean her messes." AR 272. The ALJ also emphasizes that Plaintiff sweeps, shops, and mows grass. Plaintiff reported that each week he spends about half an hour sweeping and two hours moving the grass, sitting on a riding lawnmower, and that he needs the help of his wife to complete these tasks. He also reported that he does his shopping online, and if he does go to the store, it is for no more than an hour because of back pain. In this

case, the Plaintiff does drive and use the riding mower, but the Court notes that sitting for short amounts of time for those activities is not obviously inconsistent with his testimony at the hearing that he could sit for about four hours at a time before needing to lay down, and that the short amount of time he spends each week on those activities does not remotely rise to the level of even light work.

The ALJ also refers to Plaintiff golfing and shoveling snow. Soon after his alleged disability onset date, Plaintiff sought medical treatment for an injury sustained while golfing. There is no indication that Plaintiff continued to golf after that injury, and the ALJ did not question Plaintiff about his golf habits, such as the number of holes, how often he played, or whether he played at all after the injury. There is also a single note indicating that Plaintiff shoveled snow in 2009 but had stopped, and again the ALJ did not question Plaintiff at all about this activity to determine its frequency, how much snow he shoveled, or whether it was out of necessity.

The Seventh Circuit Court of Appeals has repeatedly emphasized

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as []he would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *see also Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) (explaining that a plaintiff's ability to complete activities of daily living does not mean that he can manage the requirements of the workplace). Furthermore, the Seventh Circuit has repeatedly criticized credibility determinations that are based on a plaintiff's ability

to take care of his personal hygiene, children, or household chores, as these alone are not sound bases for a credibility determination. *See, e.g., Moss*, 555 F.3d at 562 ("An ALJ cannot disregard a claimant's limitations in performing household activities. The ALJ here ignored [the plaintiff]'s numerous qualifications regarding [his] daily activities" and methods of coping with pain); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2006) ("The administrative law judge's casual equating of household work to work in the labor market cannot stand."); *Zurawski*, 245 F.3d at 887 (asserting that daily activities, such as doing laundry, helping children prepare for school, cooking, and washing dishes do not necessarily undermine or contradict a claim of disabling pain). In short, the ALJ equated Plaintiff's moderate activities of daily living with full time employment, and his credibility assessment must therefore be remanded.

The ALJ also notes that Plaintiff continued to work after his alleged date of onset of disability and uses this as evidence that he is not disabled. Continuing to work after disability begins does not necessarily mean that a person is not disabled. As the Seventh Circuit has noted, "even persons who *are* disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits." *Shauger*, 675 F.3d at 697; *see also Gentle*, 430 F.3d at 867 ("A person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working."). Furthermore, the record reflects that Plaintiff was unable to keep working for long, but was fired after an argument with his boss, possible evidence of the effect of his mental health impairments or that he was physically unable to keep up with the job's requirements. The Plaintiff testified that he tried to return to work after his date of alleged onset of disability but that most employers would not take him on because of his physical limitations and when he was

able to find some work it exacerbated his symptoms.

On remand, the ALJ is directed to fully consider Plaintiff's testimony and the entirety of the record in compliance with the applicable directives, obtaining additional testimony or medical evidence as necessary.

**B.    Residual Functional Capacity**

Plaintiff argues that the ALJ did not properly evaluate the medical and mental health opinions in the record.  The Commissioner argues that the ALJ's findings are supported by substantial evidence.

The RFC is an assessment of what work-related activities the claimant can perform despite his limitations.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1).  In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3).  According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p at *7.  Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review.  *Clifford*, 227 F.3d at 870; *Young,*

362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

      1.    <u>Weight to Physician's Opinions</u>

Plaintiff argues that the ALJ's analysis of treating physician Dr. Magno was flawed because he failed to weigh the opinion as required by the Code. The Commissioner argues that the ALJ reasonably considered Dr. Magno's opinion but found that it was not consistent with the evidence of record.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(c)(2)). In deciding how much weight to give a doctor's opinion, the factors an ALJ considers are: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). If "an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio*, 630 F.3d at 710 (citing 20 C.F.R. § 404.1527(d)(2); other citations omitted).

Dr. Magno was Plaintiff's treating physician, but the ALJ afforded little weight to Dr. Magno's opinion. As Plaintiff argues, the ALJ did not address the length of Dr. Magno's treatment relationship with Plaintiff, whether his opinions were supported, or whether Dr. Magno specialized in the medical condition at issue. Dr. Magno treated Plaintiff for more than ten years, and the record contains numerous examination notes spanning several years. Despite the Commissioner's arguments about how Dr. Magno's opinion is inconsistent with the rest of the record, the ALJ only described its inconsistencies with Plaintiff's daily activities and the fact that a consultative examiner noted that Plaintiff appeared comfortable sitting during the exam, but did not mention any contrary medical records. As described above, the ALJ overstated the extent of Plaintiff's daily activities and did not address much of the medical evidence in the record.

Plaintiff also argues that the ALJ did not properly evaluate the opinion of consultative physician Dr. Smejkal. Plaintiff argues that the ALJ said he gave great weight to Dr. Smejkal's report, but did not explain how he analyzed the parts of the report that he did not adopt and did not explain his reasons for rejecting some of his specific findings.

Dr. Smejkal performed a physical examination of Plaintiff and noted Plaintiff's difficulty stooping, squatting, walking, standing from a sitting position and need for assistance getting on and off the examination table. In the Administrative Record provided to the Court, Dr. Smejkal's report is labeled Exhibit 19F. The ALJ gave "great weight" to the "State agency physical consultant's assessment that the claimant has the residual functional capacity to perform work at the light level," without citing an exhibit. Dr. Smejkal did not give any assessment of Plaintiff's work capacity, and the next exhibit in the Record is a Physical Residual Functional

Capacity Assessment completed by consultative state agency physician Ruiz. Its conclusions are almost entirely adopted in the ALJ's RFC. It appears to the Court that the ALJ, rather than failing to explain how he incorporated the walking and postural limitations found by Dr. Smejkal in the RFC, did not cite the exhibit he did rely on.

Earlier in his opinion, the ALJ referred Dr. Smejkal's note that Plaintiff appeared comfortable while sitting during the physical exam, but nowhere in his opinion does the ALJ mention Plaintiff's difficulties stooping, walking, or standing up from sitting as recorded by Dr. Smejkal. If the Plaintiff's interpretation of the ALJ's opinion is correct, then the ALJ erred in failing to explain why he did not adopt a significant portion of Dr. Smejkal's findings despite saying that he gave them great weight. If the Court's interpretation is correct, then the ALJ disregarded or gave little weight to the conclusions of *all* of Plaintiff's treating and examining physicians and instead relied on the opinion of the non-examining agency physician. *See Latkowski v. Barnhart*, 93 F. App'x 963, 969 (7th Cir. 2004) ("If the ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ must support that decision with 'good reasons.' The contrary opinion of a non-examining physician, in and of itself, is not sufficient reason to reject the opinion of the treating physician.") (citing 20 C.F.R. § 404.1527(c)(2)). Either way, the ALJ failed to explain his reasoning and to build a logical bridge from the medical evidence, particularly the evidence provided by treating and examining physicians, to his conclusions. *O'Connor-Spinner*, 627 F.3d at 618. On remand, the ALJ is directed to "consider[] *all* relevant evidence (including [Plaintiff]'s complaints of disabling pain) in weighing whether [Plaintiff] is disabled." *Clifford*, 227 F.3d at 871.

2.       Obesity and Sleep Apnea

Plaintiff argues that the ALJ failed to consider the effect of Plaintiff's obesity on his other impairments.  Plaintiff argues that he had a BMI of 48.8 at the time of the hearing and that, although his weight had fluctuated, it was consistently in the "extremely obese" category.

A BMI greater than 30 is considered obese.  SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002).  Social Security Ruling 02-1p requires an ALJ to consider obesity as an impairment and the exacerbating effects of a claimant's obesity on his other conditions, even if the obesity is not itself a severe impairment, when arriving at the RFC assessment.  *Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008); *Gentle*, 430 F.3d at 868 (finding that, even if obesity is not a severe impairment itself, and "merely aggravates a disability caused by something else; it still must be considered for its incremental effect on the disability, as the administrative law judge failed to do."); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).  Ruling 02-1p provides that, in evaluating obesity in assessing RFC, "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment."  SSR 02-1p at *6.  Further, Ruling 02-1p explains that an ALJ's RFC determination must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  *Id*. (citing SSR 96-8p).

Plaintiff also argues that the ALJ failed to explain how he considered Plaintiff's sleep apnea.  Plaintiff argues that there was evidence that it caused daytime drowsiness and, although the ALJ concluded that it was a non-severe impairment, he should have still considered it as part of the RFC determination, particularly as it is often related to obesity.  *See* SSR 02-1p at *3

("Obesity increases the risk of developing impairments such as . . . sleep apnea. . . . The effects of obesity may be subtle, such as the loss of mental clarity and slowed reactions that may result from obesity-related sleep apnea.").

The Commissioner did not address Plaintiff's arguments about his obesity and sleep apnea. As Plaintiff argues, the Commissioner has thereby waived any argument as to these issues. *See, e.g., Palmer v. Marion Cnty.*, 327 F.3d 588, 597-98 (7th Cir. 2003) ("because Palmer failed to delineate his negligence claim in his district court brief in opposition to summary judgment or in his brief to this Court, his negligence claim is deemed abandoned.") (citing *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir.2000); *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999); *Medley v. City of Milwaukee*, 969 F.2d 312, 317 (7th Cir. 1992)).

On remand, the ALJ is directed to explicitly address Plaintiff's obesity and sleep apnea and consider how those impairments may aggravate his other impairments and impede his ability to sustain full-time work.

3.    Mental Limitations

Plaintiff argues that the ALJ failed to properly explain how he considered the VE's opinions regarding Plaintiff's mental limitations. In particular, Plaintiff argues that the ALJ failed to explain the basis for his conclusion that Plaintiff was capable of performing simple, routine, repetitive tasks involving no more than three or four steps.

When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Kasarsky v. Barnhart*,

335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers.") (citation omitted). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform. *Kasarsky*, 335 F.3d at 543.

In this case, the ALJ proposed a series of hypothetical questions to the VE about job availability to individuals with different limitations. The VE opined that there would be no work in response to several hypothetical scenarios, and the ALJ asked him, "And what element of that hypothetical is precluding work, sir?" AR 65. In response, the VE said that, given the limitation to unskilled work and other physical limitations in the hypothetical, "if there were allowances for more than one or two steps, there would be work." AR 65. The ALJ then adjusted the limitation in the hypothetical to three or four step tasks, at which point the VE described jobs available to that individual. AR 65-66. The ALJ's RFC includes a limitation to "work that is simple, routine, and repetitive consisting of three to four step tasks." AR 17. The ALJ discusses evidence of Plaintiff's mental impairments, including limitations in concentration, persistence and pace. However, despite a record replete with reports of Plaintiff's difficulties with concentration and memory, the ALJ does not identify the medical evidence on which he bases his conclusion that Plaintiff is capable of three- to four-step tasks, despite his obligation to build a logical bridge to his conclusions. *O'Connor-Spinner*, 627 F.3d at 618.

As Plaintiff argues, the ALJ failed to explain how he reached his conclusion. It appears that the ALJ may have made his RFC determination on the basis of the VE testimony, rather than honestly appraising Plaintiff's abilities as reflected in the medical records, a grave error. *See,*

*e.g., Olson v. Astrue*, No. 08 C 0996, 2009 WL 2365511, at *13 (N.D. Ill. Mar. 16, 2009) ("The ALJ plainly was required to address this testimony by the VE, which could have been determinative of the disability determination in a way contrary to the conclusion that the ALJ reached."); *Connor v. Shalala*, 900 F. Supp. 994, 1004 (N.D. Ill. 1995) ("Since the VE's testimony in this case was determinative to the ALJ's decision of 'not disabled,' her failure to address the VE's concessions in cross-examination must be remedied.").  The Commissioner does not address the argument at all.

On remand, the ALJ is directed to fully consider the medical evidence and make his finding on the basis of the evidence, not in service of a desired outcome.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 15] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 27th day of March, 2014.

s/ John E. Martin_____
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:    All counsel of record